

# SEALED

Office of the United States Attorney
District of Nevada
333 Las Vegas Boulevard, Suite 5000
Las Vegas, Nevada 89101
(702) 388-6336

1  DANIEL G. BOGDEN
   United States Attorney
2  CRANE M. POMERANTZ
   Assistant United States Attorney
3  Lloyd D. George United States Courthouse
   333 Las Vegas Boulevard South, Suite 5000
   Las Vegas, Nevada 89101
4  (702) 388-6336

5  LESLIE R. CALDWELL
   Assistant Attorney General
6  Criminal Division, United States Department of Justice
   MATTHEW A. LAMBERTI
7  Senior Counsel
   Computer Crime and Intellectual Property Section
   1301 New York Avenue, NW, Suite 600
8  Washington, DC 20530
   (202) 514-1026

```
____ FILED       ____ RECEIVED
____ ENTERED     ____ SERVED ON
              COUNSEL/PARTIES OF RECORD

         FEB - 3 2016

      CLERK US DISTRICT COURT
        DISTRICT OF NEVADA
BY:_____ DEPUTY
```

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEVADA
-oOo-

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | **SEALED CRIMINAL INDICTMENT** |
| Plaintiff, ) | 2:16-CR- 33 |
| ) | **VIOLATIONS:** |
| v. ) | |
| ) | 18 U.S.C. § 371 – Conspiracy to Traffic in Counterfeit Goods and to Introduce into Interstate Commerce Misbranded Devices |
| DMITRIY V. MELNIK, ) | |
| a/k/a Dmitry Melnik, ) | 18 U.S.C. § 2320(a)(1) – Trafficking in Counterfeit Goods |
| a/k/a Dimitri Melnik, ) | |
| Defendant. ) | 21 U.S.C. §§ 331(a) and 333(a)(2) – Introduction into Interstate Commerce of Misbranded Devices |
| ) | 18 U.S.C. § 2 – Aiding and Abetting |

…

…

**THE GRAND JURY CHARGES THAT:**

At all times material to this Indictment:

## General Allegations

1. Candy Color Lenses, a business involving the importation and sale of colored contact lenses, was operated over the internet through www.candycolorlenses.com.

2. Defendant DMITRIY V. MELNIK a/k/a Dmitry Melnik a/k/a Dimitri Melnik ("MELNIK") was the owner and operator of Candy Color Lenses.

3. 363 Solutions, Inc. ("363 Solutions") was based in Las Vegas, Nevada, and engaged in the business of commercial cleaning services as well as importing and selling contact lenses. 363 Solutions' business address was 573 Pale Pueblo Court, Las Vegas, Nevada 89123.

4. MELNIK was the owner and operator of 363 Solutions.

5. LV Hangers, Inc. ("LV Hangers") was based in Las Vegas, Nevada, and was engaged in the business of manufacturing, including producing wire hangers, as well as storing contact lenses and preparing shipments of those contact lenses to customers. LV Hangers' business address was 6270 Kimberly Avenue, Suite B, Las Vegas, Nevada 89122.

6. MELNIK was the owner and operator of LV Hangers.

7. Shoes 4 Less was based in Henderson, Nevada, and was engaged in the business of selling shoes, clothing, contact lenses, and other items. Shoes 4 Less's business address was 10000 S. Eastern Avenue, Henderson, Nevada 89052.

8. An individual related to MELNIK was the owner and operator of Shoes 4 Less.

9. As part of his operation of Candy Color Lenses, MELNIK used the email addresses ccl.team@yahoo.com, candycolorlenses@gmail.com, guddeal4you@candycolorlenses.com, and lv363solutions@yahoo.com.

...

10. On April 13, 2011, MELNIK applied for and was assigned P.O. Box 230801, Las Vegas, NV 89123 for use as a business listed as Guddeal4you and with an email address of lv363solutions@yahoo.com.

11. On September 27, 2011, MELNIK applied for and was assigned P.O. Box 778002, Henderson, NV 89052 for use as a business listed as www.CandyColorLenses.com and with an email address of lv363solutions@yahoo.com.

## Contact Lenses

12. Contact lenses, even if worn for cosmetic reasons, were medical devices that must be worn under the prescription, direction, and supervision of an eye care professional. If not fitted, worn, or cared for properly, contact lenses could result in serious eye injury, scarring of the cornea, and loss of vision. An eye care professional could advise individuals about who should not wear contact lenses, and situations or environmental conditions that may be inappropriate for contact lens wear.

13. Ciba Vision Inc. was based in Duluth, Georgia, and was a leading manufacturer of contact lenses and lens care products, including FreshLook COLORBLENDS contact lenses. Ciba Vision was part of Alcon, a wholly owned subsidiary of Novartis International AG ("Novartis"), a pharmaceutical company based in Basel, Switzerland.

14. Novartis had registered the following trademarks on the principal register of the United States Patent and Trademark Office ("USPTO") and they were in use before 2011 until the present:

   a. Number 2,888,957 ("the '957 Mark"), "FRESHLOOK," for use in connection with contact lenses;

   b. Number 2,340,808 ("the '808 Mark"), "COLORBLENDS," for use in connection with contact lenses; and

    c. Number 3,429,280 ("the '280 Mark"), "CIBA VISION," for use in connection with contact lenses.

15. FreshLook COLORBLENDS were disposable colored soft contact lenses designed for daily wear, with nightly removal and proper cleaning and storage for up to two weeks before disposal. A soft contact lens is intended to be worn directly against the cornea and adjacent limbal and scleral areas of the eye.

16. FreshLook COLORBLENDS were available in numerous colors including blue, honey, green, gray, brown, turquoise, amethyst, true sapphire, and pure hazel.

17. Generally, FreshLook COLORBLENDS were available at participating optometrist and ophthalmologist offices and at optical store retailers. They were packaged six contact lenses in one box. Novartis provided information to eye care professionals to advise users on directions for use as well as warnings against unsafe methods and duration of administration and application.

18. Novartis did not manufacture or license the manufacture of FreshLook COLORBLENDS in the People's Republic of China ("China") or the Republic of Korea ("South Korea"). Rather, they were manufactured in Batam, Indonesia.

19. Novartis only permitted authorized distributors to sell FreshLook COLORBLENDS. MELNIK, Candy Color Lenses, LV Hangers, 363 Solutions, and Shoes 4 Less were not authorized to sell these items.

20. Other disposable colored soft contact lenses including those under the brand names Cool, Jessica, ViviGo, and Crazy were manufactured and distributed in other countries. These contact lenses were available in numerous different colors and styles.

**Regulatory Background**

21. The U.S. Food and Drug Administration ("FDA"), part of the Department of Health and Human Services, was the agency of the United States responsible for enforcing the provisions of

4

the Food, Drug and Cosmetic Act ("FD&C Act"). Among the purposes of the FD&C Act was to ensure that devices intended for use in the mitigation of disease or intended to affect the structure or any function of the body, provided reasonable assurances of safety and effectiveness.

22. Under the FD&C Act, all contact lenses were devices. 21 U.S.C. §§ 321(h) and 360j(n).

23. Specifically, a soft contact lens intended for daily wear only was a Class II device. 21 C.F.R. § 886.5925(b)(1). If the soft contact lens was intended for extended wear, it was a Class III device. 21 C.F.R. § 886.5925(b)(2).

24. Class I devices were subject to general controls including registration, listing, reporting requirements, and prohibitions against misbranding. 21 U.S.C. § 360c(a)(1)(A).

25. For Class II devices, the general controls applicable to Class I devices were by themselves insufficient to provide a reasonable assurance of safety and effectiveness. Therefore, in addition to general controls, the FDA could establish special controls such as premarket notification (also known as "510(k) clearance"), performance standards, and postmarket surveillance for Class II devices. 21 U.S.C. § 360c(a)(1)(B).

26. For Class III devices, both the general controls applicable to Class I devices and the special controls for Class II devices were by themselves insufficient to provide a reasonable assurance of safety and effectiveness where the device's use had a substantial importance in preventing impairment of human health or presented a potential unreasonable risk of illness or injury. Therefore, in addition to the general and special controls, the FDA required further premarket approval before the devices could be imported or sold in the United States. 21 U.S.C. § 360c(a)(1)(C).

27. The owner or operator of an establishment within any foreign country engaged in the manufacture, preparation, propagation, compounding, or processing of a device that was imported or

offered for import into the United States was required to register with the FDA and to list its products with the FDA by providing certain required information about those products. 21 U.S.C. § 360(i) and (j).

28. A person required to register with the FDA who sought to distribute commercially contact lenses that were Class II devices by introducing or delivering for introduction those devices into interstate commerce generally needed prior clearance from the FDA through the 510(k) submission process. 21 U.S.C. § 360(k).

29. It was unlawful to introduce or deliver for introduction into interstate commerce any device that was misbranded. 21 U.S.C. § 331(a).

30. The connection with "interstate commerce" required for jurisdiction was presumed to exist in any action to enforce the requirements of the FD&C Act. 21 U.S.C. § 379a.

31. A device was misbranded if its labeling was false or misleading in any particular. 21 U.S.C. § 352(a).

32. A device was misbranded if it was manufactured, prepared, propagated, compounded, or processed in an establishment that was not duly registered with the FDA under 21 U.S.C. § 360. 21 U.S.C. § 352(o).

33. A device was misbranded if it was not included in a list required by 21 U.S.C. § 360(j) to be filed with the FDA of devices manufactured, prepared, propagated, compounded, or processed by registered establishments. 21 U.S.C. § 352(o).

34. A device was misbranded if it was not covered by notices or other information to be provided to the FDA by registered establishments as required by 21 U.S.C. §§ 360(j) and (k). 21 U.S.C. § 352(o).

35. A device was misbranded if its labeling did not bear adequate directions for use, unless the FDA promulgated regulations exempting the device from this requirement. 21 U.S.C.

§ 352(f)(1); 21 C.F.R. § 801.109.

36. A device was misbranded if its labeling did not bear adequate warnings against unsafe methods or duration of administration or application, in such a manner and form as was necessary for the protection of users. 21 U.S.C. § 352(f)(2).

37. Contact lenses had potentiality for harmful effect, including scratches on the cornea, corneal infection, conjunctivitis, decreased vision, and blindness. Accordingly, adequate directions for use for contact lenses could not be prepared, and contact lenses could only be sold to or on the prescription of a practitioner licensed by law to direct their use. 21 C.F.R. § 801.109.

38. In addition, substandard or counterfeit contact lenses and contact lens solution could contain bacteria and other microorganisms that could contaminate an individual's contact lenses and lead to serious eye infections.

39. The *Ochrobactrum anthropi* bacterium was a potential human pathogen that could cause severe symptoms in humans, particularly individuals with an underlying medical condition. Specifically, it could have caused bacteremia, which in turn could result in sepsis, septic shock, and even lead to possible fatal infections such as infective endocarditis and osteomyelitis. *Ochrobactrum anthropi* had a very broad spectrum of antibiotic resistance, which made it difficult to treat.

### Suppliers

40. Supplier 1 was located in South Korea and supplied MELNIK with contact lenses labeled as Jessica. Jessica contact lenses were not manufactured, prepared, propagated, compounded, and processed in an establishment registered with the FDA and were not cleared, approved, and authorized by the FDA for import, distribution, and sale in the United States.

41. Supplier 2 was located in China and supplied MELNIK with contact lenses labeled as Cool and ViviGo as well as contact lenses with counterfeit Ciba Vision FreshLook

COLORBLENDS trademarks. Cool contact lenses were not manufactured, prepared, propagated, compounded, and processed in an establishment registered with the FDA and not cleared, approved, and authorized by the FDA for import, distribution, and sale in the United States. ViviGo contact lenses were not manufactured, prepared, propagated, compounded, and processed in an establishment registered with the FDA and not cleared, approved, and authorized by the FDA for import, distribution, and sale in the United States.

42. Supplier 3 was located in China and supplied MELNIK with contact lenses labeled as Crazy. Crazy contact lenses were not manufactured, prepared, propagated, compounded, and processed in an establishment registered with the FDA and not cleared, approved, and authorized by the FDA for import, distribution, and sale in the United States.

43. Supplier 4 was located in China and supplied MELNIK with contact lenses labeled as Cool. Cool contact lenses were not manufactured, prepared, propagated, compounded, and processed in an establishment registered with the FDA and not cleared, approved, and authorized by the FDA for import, distribution, and sale in the United States.

## COUNT ONE
(Conspiracy to Traffic in Counterfeit Goods and to Introduce into Interstate Commerce Misbranded Devices)

44. The Grand Jury further charges and incorporates by reference the allegations of paragraphs 1 through 43 above, as though fully set forth herein.

45. Beginning on a date unknown, but by no later than in or about February 2011, and continuing to on or about August 21, 2013, in the Federal District of Nevada and elsewhere,

DMITRIY V. MELNIK,
a/k/a Dmitry Melnik,
a/k/a Dimitri Melnik,

and others known and unknown to the Grand Jury, knowingly and intentionally combined, conspired, and agreed to commit certain offenses against the United States, namely:

a. Trafficking in counterfeit goods, in violation of Title 18, United States Code, Section 2320(a)(1); and

b. With intent to defraud and mislead, introducing and causing to be introduced, and delivering and causing delivery for introduction, into interstate commerce misbranded devices, in violation of Title 21, United States Code, Sections 331(a) and 333(a)(2).

## PURPOSE AND OBJECTS OF THE CONSPIRACY

46. The conspiracy had the following purpose and objects, among others: to make money by importing counterfeit and misbranded devices, namely, Ciba Vision FreshLook COLORBLENDS, Cool, Jessica, ViviGo, Crazy, and other contact lenses in the United States; avoiding detection and seizure of the illegal contact lenses by U.S. Customs authorities; and after receipt of the counterfeit and unauthorized contact lenses, unlawfully selling them as "authentic" to customers located throughout the United States.

## MANNER AND MEANS OF THE CONSPIRACY

47. In furtherance of the conspiracy, MELNIK, together with others known and unknown to the Grand Jury, employed, among others, the following manner and means:

48. It was part of the conspiracy that conspirators imported thousands of contact lenses into the United States from China and South Korea that bore counterfeit trademarks and were otherwise misbranded.

49. It was a further part of the conspiracy that conspirators imported contact lenses with counterfeit Ciba Vision FreshLook COLORBLENDS trademarks and sought to ensure that the contact lenses and their packaging would look "correct."

50. It was a further part of the conspiracy that the wholesale price of the counterfeit and unauthorized contact lenses imported into the United States was generally just a few dollars a pair but that the retail price in the United States charged customers was substantially more.

51. It was a further part of the conspiracy that the companies that manufactured and exported the contact lenses to the United States were not registered with the FDA and had not provided to the FDA any of the required forms, notices, and other information necessary to import the contact lenses into the United States, and conspirators knew that it was unlawful to import into and sell the contact lenses in the United States.

52. It was a further part of the conspiracy that conspirators were informed that unauthorized contact lenses could not be imported into the United States and sold there but continued to import and sell unauthorized contact lenses into the United States.

53. It was a further part of the conspiracy that conspirators mislabeled and undervalued contact lenses for import into the United States to attempt to evade scrutiny by customs officers and thus avoid rejection or seizure.

54. It was a further part of the conspiracy that conspirators caused contact lenses to be sent in different shipments to different addresses, including two Post Office Boxes, on different days to attempt to evade scrutiny by customs officers and thus avoid rejection and seizure.

55. It was a further part of the conspiracy that, after customs officers rejected unauthorized contact lens shipments to the United States and returned them, conspirators would cause the shipments to be resent to the United States, where the contact lenses would then be sold.

56. It was a further part of the conspiracy that contact lenses imported and sold in the United States were counterfeit, substandard, and low quality; had the potentiality of harmful effect, including scratches on the cornea, corneal infection, conjunctivitis, decreased vision, and blindness; and some were contaminated with the *Ochrobactrum anthropi* bacterium, a potential human pathogen.

57. It was a further part of the conspiracy that conspirators sold counterfeit and unauthorized contact lenses without a prescription and thus without proof that the customer had

1  previously seen a licensed practitioner, and without required FDA instructions and warnings.

2      58.    It was a further part of the conspiracy that conspirators tried to ensure counterfeit
3  contact lenses looked authentic and they were sold to retail customers as authentic, when in fact
4  many retail customers complained after purchasing the contact lenses about their poor quality and
5  questioned whether the contact lenses were authentic and whether the FDA had authorized the sale
6  of the contact lenses.

7      59.    It was a further part of the conspiracy that the conspirators stored, repackaged,
8  proffered for sale, and sold counterfeit and unauthorized contact lenses and contact lens solution at
9  various locations including www.candycolorlenses.com, 363 Solutions, LV Hangers, and Shoes 4
10 Less, with thousands of contact lenses being distributed to retail customers through the United
11 States.

12     60.    It was a further part of the conspiracy that conspirators communicated by electronic
13 mail and other means regarding orders, purchases, and deliveries of contact lenses and regarding
14 international wire payments for those contact lenses.

15              OVERT ACTS COMMITTED IN FURTHERANCE OF THE CONSPIRACY

16     61.    In furtherance of the conspiracy and to effect the objects thereof, at least one of the
17 co-conspirators committed and caused to be committed in the District of Nevada and elsewhere, the
18 following overt acts:

19         a.    On or about September 13, 2011, MELNIK ordered from Supplier 1 in South
20 Korea 900 pairs of contact lenses bearing the brand name Jessica and 1000 contact lenses cases.

21         b.    On or about September 14, 2011, MELNIK received an invoice for his order
22 from Supplier 1 billing him $2829.00.

23         c.    On or about September 14, 2011, MELNIK wired $2829.00 from Citibank
24 Account xxxxx0481 to Supplier 1.

   d. On or about August 14, 2012, MELNIK ordered from Supplier 2 in China 350 contact lenses with counterfeit Ciba Vision FreshLook COLORBLENDS trademarks.

   e. On or about August 14, 2012, MELNIK ordered from Supplier 2 in China 900 contact lenses bearing the brand name Cool.

   f. On or about August 14, 2012, MELNIK received an invoice for his orders from Supplier 2 billing him $3500.00.

   g. On or about August 14, 2012, MELNIK wired $3500.00 from Citibank Account xxxxx0481 to Supplier 2.

   h. On or about January 10, 2013, MELNIK ordered from Supplier 3 in China 675 pairs of contact lenses bearing the brand name Crazy.

   i. On or about January 10, 2013, MELNIK received an invoice for his order from Supplier 3 billing him $1780.00.

   j. On or about January 14, 2013, MELNIK wired $1780.00 from Citibank Account xxxxx0481 to Supplier 3.

   k. On or about January 24, 2013, MELNIK ordered from Supplier 4 in China 300 pairs of contact lenses bearing the brand name Cool.

   l. On or about January 24, 2013, MELNIK received an invoice for his order from Supplier 4 billing him $1812.50.

   m. On or about January 24, 2013, MELNIK wired $1812.50 from Citibank Account xxxxx0481 to Supplier 4.

   n. On or about July 22, 2013, MELNIK caused delivery to be proffered of three pairs of contact lenses bearing counterfeit Ciba Vision FreshLook COLORBLENDS trademarks for $52.92 from Nevada.

…

o.  On or about July 30, 2013, MELNIK caused three pairs of contact lenses bearing counterfeit Ciba Vision FreshLook COLORBLENDS trademarks to be delivered to Arizona.

All in violation of Title 18, United States Code, Section 371.

## COUNTS TWO THROUGH FIVE
(Trafficking in Counterfeit Goods; Aiding and Abetting)

62.  The allegations of paragraphs 1 through 43 above are realleged and incorporated herein by reference.

63.  On or about the dates listed below in the District of Nevada, and elsewhere, the defendant

DMITRIY V. MELNIK,
a/k/a Dmitry Melnik,
a/k/a Dimitri Melnik,

intentionally trafficked and attempted to traffic in goods, namely, contact lenses, while knowingly using on or in connection with those goods counterfeit marks, namely, spurious marks identical with and substantially indistinguishable from the '957 Mark, '808 Mark, and '280 Mark, contrary to the provisions of 18 U.S.C. § 2320(a)(1), each such instance being a separate count of this indictment, as more fully described below:

| Count | Approximate Date | Approximate Quantity | Brand | Seller | Origin | Destination |
|---|---|---|---|---|---|---|
| 2 | 4/23/12 | 350 pairs | Ciba Vision FreshLook COLORBLENDS | Supplier 2 | China | United States |
| 3 | 8/14/12 | 350 pairs | Ciba Vision FreshLook COLORBLENDS | Supplier 2 | China | United States |
| 4 | 9/9/12 | 310 pairs | Ciba Vision FreshLook COLORBLENDS | Supplier 2 | China | United States |
| 5 | 9/26/12 | 300 pairs | Ciba Vision FreshLook COLORBLENDS | Supplier 2 | China | United States |

All in violation of Title 18, United States Code, Sections 2320(a)(1) and 2.

## COUNTS SIX THROUGH EIGHT
(Introduction into Interstate Commerce of Misbranded Devices; Aiding and Abetting)

64. The allegations of paragraphs 1 through 43 above are realleged and incorporated herein by reference.

65. On or about the dates listed below in the District of Nevada, and elsewhere, the defendant

DMITRIY V. MELNIK,
a/k/a Dmitry Melnik,
a/k/a Dimitri Melnik,

with the intent to defraud and mislead, did introduce and cause to be introduced into interstate commerce, and did deliver and cause delivery for introduction into interstate commerce, devices, that is, contact lenses that were misbranded in the following way: their labeling was false and misleading in any particular, contrary to the provisions of 21 U.S.C. § 352(a), each such instance being a separate count of this indictment, as more fully described below:

| Count | Approximate Date | Approximate Quantity | Brand | Origin | Destination |
|---|---|---|---|---|---|
| 6 | 11/15/12 | 3 pairs | Ciba Vision FreshLook COLORBLENDS | Nevada | Arizona |
| 7 | 3/1/13 | 5 pairs | Ciba Vision FreshLook COLORBLENDS | Nevada | Arizona |
| 8 | 7/22/13 | 3 pairs | Ciba Vision FreshLook COLORBLENDS | Nevada | Arizona |

All in violation of Title 21, United States Code, Section 331(a) and 333(a)(2) and Title 18, United States Code, Section 2.

## COUNTS NINE THROUGH TEN
(Introduction into Interstate Commerce of Misbranded Devices; Aiding and Abetting)

66. The allegations of paragraphs 1 through 43 above are realleged and incorporated herein by reference.

14

1    67.    On or about the dates listed below in the District of Nevada, and elsewhere, the defendant

DMITRIY V. MELNIK,
a/k/a Dmitry Melnik,
a/k/a Dimitri Melnik,

with the intent to defraud and mislead, did introduce and cause to be introduced into interstate commerce, and did deliver and cause delivery for introduction into interstate commerce, devices, that is, contact lenses that were misbranded in the following ways: (1) they were manufactured, prepared, propagated, compounded, and processed in establishments not duly registered with the FDA, contrary to the provisions of 21 U.S.C. § 352(o); (2) they were not included in a list required to be filed with the FDA of devices manufactured, prepared, propagated, compounded, and processed by registered establishments, contrary to the provisions of 21 U.S.C. § 352(o); (3) they were not covered by notices and other information required to be provided to the FDA by registered establishments, contrary to the provisions of 21 U.S.C. § 352(o); (4) their labeling did not bear adequate directions for use, contrary to the provisions of 21 U.S.C. § 352(f)(1) and 21 C.F.R. § 801.109; and (5) their labeling did not bear adequate warnings against unsafe methods and duration of administration and application, in such manner and form, as are necessary for the protection of users, contrary to the provisions of 21 U.S.C. § 352(f)(2), each such instance being a separate count of this indictment, as more fully described below:

| Count | Approximate Date | Approximate Quantity | Brand | Origin | Destination |
|---|---|---|---|---|---|
| 9 | 1/23/13 | 8 pairs | Cool | Nevada | Arizona |
| 10 | 1/23/13 | 1 pair | Jessica | Nevada | Arizona |

All in violation of Title 21, United States Code, Section 331(a) and 333(a)(2) and Title 18, United States Code, Section 2.

...

15

**FORFEITURE ALLEGATION**
(Conspiracy to Traffic in Counterfeit Goods; Trafficking in Counterfeit Goods)

68.     The allegations contained in Counts One through Five of this Indictment are hereby realleged and incorporated herein by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 2323(b) and Title 18, United States Code, Section 2323(a)(1) with Title 28, United States Code, Section 2461(c).

69.     Upon conviction of the felony offenses charged in Count One of this Indictment,

DMITRIY V. MELNIK,
a/k/a Dmitry Melnik,
a/k/a Dimitri Melnik,

defendant herein, shall forfeit to the United States of America, any property subject to forfeiture under Title 18, United States Code, Section 2323(a):

any article, the making or trafficking of which is, prohibited under Title 18, United States Code, Sections 371 and 2320(a)(1),

any property used, or intended to be used, in any manner or part to commit or facilitate the commission of Title 18, United States Code, Sections 371 and 2320(a)(1),

any property constituting or derived from any proceeds obtained directly or indirectly as a result of the commission of Title 18, United States Code, Sections 371 and 2320(a)(1),

including, but not limited to, the following:

a.     908 boxes (each containing two foils) and 45 single foils of contact lenses labeled as manufactured by Ciba Vision with the brand name FreshLook COLORBLENDS, and seized on or about August 21, 2103;

b.     1627 boxes (each containing two foils) and 23 single foils of contact lenses labeled as manufactured by Cool with the brand name Cosmetic Tornado B, and seized on or about August 21, 2013;

  c. 282 boxes (each containing two foils) of contact lenses labeled as manufactured by Innova Vision with the brand name ColorMaker, and seized on or about August 21, 2013;

  d. 233 boxes (each containing two foils) of contact lenses labeled as manufactured by Innova Vision with the brand name ColorNova, and seized on or about August 21, 2013;

  e. 45 boxes (each containing two foils) of contact lenses labeled as manufactured by Innova Vision with the brand name Magic, and seized on or about August 21, 2013;

  f. 30 boxes (each containing two foils) of contact lenses labeled as manufactured by Innova Vision with the brand name Dragon Gold, and seized on or about August 21, 2013;

  g. 62 foils of contact lenses labeled as manufactured by Innova Vision with the brand name Picasso, and seized on or about August 21, 2013;

  h. 155 boxes (each containing two foils) of contact lenses labeled as manufactured by Hana Korea, Inc. or Viewell, Inc. with the brand name Jessica, and seized on or about August 21, 2013;

  i. 4044 miscellaneous unboxed vials containing contact lenses labeled as manufactured by different companies and with different brand names, including but not limited to Cool, Jessica, Vassen ViviGo, Magic, Cherry Gold, Crazy Smile, Pink Cat, Dead White, Yellow Cat, Magic, and Red Hot, and seized on or about August 21, 2013;

  j. 6 bottles of contact lens solution labeled as manufactured by Ciba Vision with the brand name FreshLook, and seized on or about August 21, 2013;

  k. Five yellow sealed envelopes bearing return address Candy Ship Dep, PO Box

778002, Henderson, NV 89052 and stamps.com number xxxxxxxxx4045, seized on or about August 21, 2013;

    l.    $19,000 in cash in Safety Deposit Box 1004 at US Bank, 4550 E. Sunset Rd., Henderson, NV, seized on or about August 23, 2013;

    m.    $12,204.02 in cash in Intuit account number xxxxxxx4513, seized on or about September 16, 2013;

    n.    $10,242.50 in cash in Citibank account number xxxxxxx0481, seized on or about September 13, 2013;

    o.    $7,000.63 in cash in Citibank account number xxxxxxx6513, seized on or about September 12, 2013;

    p.    $2,384.37 in cash in Citibank account number xxxxxxx6497, seized on or about September 12, 2013;

    q.    $1,000 in cash in Safety Deposit Box 263 at Citibank, 495 E. Silverado Ranch Blvd., Las Vegas, NV, seized on or about August 23, 2013; and

    r.    $877.76 in cash in Intuit account number xxxxxxxxxx6508, seized on or about September 16, 2013

(all of which constitutes property).

70.    If any property being subject to forfeiture pursuant to Title 18, United States Code, Section 2323(b) and Title 18, United States Code, Section 2323(a)(1) with Title 28, United States Code, Section 2461(c), as a result of any act or omission of the defendant -

    a.    cannot be located upon the exercise of due diligence;

    b.    has been transferred or sold to, or deposited with, a third party;

    c.    has been placed beyond the jurisdiction of the court;

    d.    has been substantially diminished in value; or

e. has been commingled with other property which cannot be divided without difficulty,

it is the intent of the United States of America, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any properties of the defendant for the property listed above.

All pursuant to Title 18, United States Code, Sections 371, 2320(a)(1), and 2323(b); Title 18, United States Code, Section 2323(a)(1) with Title 28, United States Code, Section 2461(c); and Title 21, United States Code, Section 853(p).

DATED: this 3rd day of February 2016

**A TRUE BILL:**

/S/
FOREPERSON OF THE GRAND JURY

DANIEL G. BOGDEN
United States Attorney

*(signature)*

MATTHEW A. LAMBERTI
Senior Counsel – United States Department of Justice
CRANE M. POMERANTZ
Assistant United States Attorney